**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2019 IL App (3d) 170321-U

Order filed October 30, 2019

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2019

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) | |
| | ) | Appeal No. 3-17-0321 |
| v. | ) | Circuit No. 15-CF-2855 |
| | ) | |
| JAMES S. TATE, | ) | Honorable |
| | ) | Edward A. Burmila Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Presiding Justice Schmidt and Justice Carter concurred in the judgment.

_____

**ORDER**

¶ 1      *Held*:  (1) Evidence at trial was sufficient to allow a rational trier of fact to find the defendant guilty beyond a reasonable doubt; and (2) the circuit court's preliminary *Krankel* inquiry was deficient.

¶ 2      The defendant, James S. Tate, appeals following his convictions for aggravated domestic battery and aggravated battery. He argues that the State failed to prove him guilty beyond a reasonable doubt of aggravated domestic battery. He also argues that the Will County circuit

court conducted a deficient preliminary *Krankel* inquiry and that the court's conclusion following that inquiry was manifestly erroneous.

¶ 3                                    I. BACKGROUND

¶ 4        The State filed a five-count superseding indictment against the defendant on February 18, 2016. Count I of the indictment charged the defendant with aggravated domestic battery (720 ILCS 5/12-3.3(a) (West 2014)). Count I alleged that "on or about December 28, 2015," the defendant caused great bodily harm to Paula Mack "in that said defendant pushed [Mack] about the body."

¶ 5        Count II of the indictment charged the defendant with aggravated battery (*id.* § 12-3.05(a)(1)). That charge alleged that "on or about December 28, 2015," the defendant caused great bodily harm to Mack "in that said defendant struck [Mack] about the body."

¶ 6        Counts III through V of the indictment each charged the defendant with domestic battery (*id.* § 12-3.2(a)(1), (a)(2)).[1] Count III alleged the defendant made contact of an insulting or provoking nature with Mack (*id*. § 12-3.2(a)(2)) in that he "pushed [Mack] about the body" on or about December 26, 2015. Counts IV and V of the indictment alleged that the defendant caused bodily harm to Mack (*id*. § 12-3.2(a)(1)) on December 27, 2015, in that he kicked her about the head and struck her about the body, respectively.

¶ 7        At the ensuing bench trial, Mack testified that she and the defendant were in their apartment on December 26, 2015, when they began arguing. Mack became angry at the defendant's comments, and went to the kitchen to retrieve a knife. Mack testified that the

---

[1]The superseding indictment originally charged counts III through V as Class 4 felonies, enhanced due to the defendant's criminal record. See 725 ILCS 5/111-3(c) (West 2014). However, the State reduced those charges to misdemeanors prior to trial.

defendant took the knife away from her and then "threw" her into a closet door. The defendant then "threw" Mack into the bathroom. The argument ended after that.

¶ 8    Mack testified that she and the defendant began arguing again "later in the evening" on December 27, 2015. At approximately 11:55 p.m., the defendant entered the bedroom and "stomped" on the top of Mack's foot. The defendant continued stomping on her head and also stomped on her right knee, which had recently undergone surgery. Mack pulled herself to her feet and sat on the bed. She testified that the defendant then "started using [her] face as a punching bag." Mack estimated that the defendant punched her five times in the head. She estimated that the assault ended at approximately 3:30 a.m. on December 28.

¶ 9    Mack went to the hospital the next morning. Photographs taken at the hospital were admitted into evidence. The photographs depict extensive bruising to Mack's face and eyes, as well as a bruise on the top of Mack's left foot. Mack testified that she received a CAT scan and spent four days in the intensive care unit (ICU). She had an MRI done on her knee. The prosecutor asked Mack: "Do you continue to have problems as a result of the injury to your knee?" Mack responded affirmatively. Mack also testified that she suffered from memory problems as a result of the injury to her head.

¶ 10   On cross-examination, Mack reaffirmed that she "pulled a knife" on the defendant on the night of December 26. Mack testified that after the defendant took the knife from her, he pushed her into the closet door. Her back hit the door but her head did not. She did not fall to the floor. Mack denied that she retrieved a knife on December 27 or on any other date.

¶ 11   Following Mack's testimony, the State presented a stipulation regarding her injuries. The stipulation indicated that Mack was diagnosed with an acute subdural hematoma following a

CAT scan and was admitted to the neurological ICU. She was discharged from the ICU on December 31, 2015. After presenting the stipulation, the State rested.

¶ 12   Defense counsel moved for a directed finding. Counsel argued that "there is absolutely no proof of any great bodily harm as alleged in Count 1 and Count 2." The State argued that the photographs and diagnosis of an acute subdural hematoma supported the charge.

¶ 13   The court stated:

> "Taking the evidence in the light most favorable to the State, *** the defendant's motion is granted as to Counts 3, 4, and 5, those are dismissed. It's denied as to Counts 1 and 2. There were facts that were presented that a fact finder could return a verdict of guilty on those counts.
>
> For instance on the 26th–excuse me. Excuse me. I thought all three of those misdemeanor counts were from the 26th. It's granted as to Count 3. Counts 4 and 5 remain viable. Pardon me. I thought those were all dated the 26th. It is granted as to Count 3. I beg your pardon."

¶ 14   The defendant testified that he and Mack engaged in an argument the night of December 26, 2015. Between 9:30 and 10:30 p.m., Mack entered the kitchen and retrieved a butcher knife. The defendant testified that Mack lunged at him with the knife. The defendant grabbed her wrist and was able to take the knife from her hand. Mack attempted to pull her wrist free from the defendant's grasp. When the defendant released her wrist, Mack's momentum carried her backward into the door of the linen closet. Mack eventually rolled into the bathroom and sat on the toilet.

4

¶ 15 The defendant testified that Mack also "came at" him with a knife in the early morning hours of December 28. He head-butted Mack on the bridge of the nose to prevent the attack. He denied punching, kicking, or stomping on her that night.

¶ 16 In closing argument, defense counsel began:

> "[W]ith regard to Counts I and II, both of those counts allege there was great bodily harm. I think when you look at the evidence, Judge, there is absolutely no evidence and nothing was adduced that even points to the fact there was any great bodily harm that was suffered in this particular instance.
>
> What you have is the fact that there was a subdural hematoma at some [p]oint that was discovered by the neurosurgeon. There were no broken bones. There was some bruising, Judge, but I don't believe that raises [*sic*] to the level of great bodily harm."

Counsel devoted the remainder of his argument to attacking Mack's credibility, pointing out that the defendant had testified that Mack produced a knife on both nights in question. Counsel maintained that the defendant had acted in self-defense.

¶ 17 The court found the defendant "guilty of all the charges." Regarding the altercation on December 26, the court agreed that the defendant had met lethal force with nonlethal force. The court opined that "some of the injuries may have occurred" on that day.

¶ 18 Prior to sentencing, the defendant filed a *pro se* motion alleging ineffective assistance of counsel. In the motion, the defendant alleged, *inter alia*, that the State had offered the defendant a plea deal in which it would drop all charges to misdemeanors and recommend a sentence of one year in jail. The defendant asserted that such a sentence would be covered by time served. The defendant alleged that counsel only conveyed that offer to him moments before the trial

5

began, thus affording him insufficient time to consider the offer. The defendant alleged that he would have taken the deal if he had been provided more time to think about it.

¶ 19 The circuit court inquired into the defendant's claims on April 11, 2017. The defendant again insisted that the State had offered a plea deal and that the defendant had not had proper time to consider it. After hearing the defendant, the court denied the motion, pointing out that many of the defendant's claims related to trial strategy. The court made no reference to the purported plea offer. After ruling on the defendant's *pro se* claims, the court asked defense counsel to present argument on his posttrial motion.

¶ 20 On April 24, 2017, the court sentenced the defendant to terms of 12 years' and 5 years' imprisonment on counts I and II, respectively. Those sentences were ordered to run concurrently, with the defendant's misdemeanor convictions on counts IV and V merging into them.

¶ 21 II. ANALYSIS

¶ 22 On appeal, the defendant challenges only his aggravated domestic battery conviction under count I of the superseding indictment. With respect to that charge, the defendant argues that the State failed to prove him guilty beyond a reasonable doubt. He also argues that the circuit court's preliminary inquiry into his *pro se* claims of ineffective assistance of counsel was insufficient and that the court's subsequent denial of those claims was manifestly erroneous.

¶ 23 A. Sufficiency of the Evidence

¶ 24 The defendant challenges the sufficiency of the evidence with respect to count I of the superseding indictment on two distinct grounds. First, the defendant argues that he properly raised the affirmative defense of self-defense, and the State failed to disprove it beyond a reasonable doubt. See *People v. Spiller*, 2016 IL App (1st) 133389, ¶ 22. In support, the defendant points out that both he and Mack testified that Mack drew a knife on the defendant,

6

and the circuit court even found that the defendant faced a threat of lethal force. Next, the defendant argues that the State failed to prove that Mack suffered great bodily harm as a result of the defendant's battery. See 720 ILCS 5/12-3.3(a) (West 2014). Here, the defendant points out that no evidence was presented that Mack was injured in any way when she impacted the closet door.

¶ 25    The entirety of the defendant's argument on appeal rests on the assumption that count I of the superseding indictment charged the defendant for the incident that occurred on December 26, 2015. The defendant bases this assumption first on the fact that count I charged him with pushing Mack, and the evidence at trial indicated that the only push occurred during the December 26 altercation. More obliquely, the defendant asserts: "There were *** clearly two separate and distinct incidents here, which gave rise to the separate and distinct charges in Counts I and II of the superceding [*sic*] indictment."

¶ 26    The defendant's assumption is incorrect. Count I of the superseding indictment charged the defendant with conduct occurring on or about December 28, 2015, which tends to indicate that that count was *not* referencing conduct that occurred on December 26. Indeed, the defendant's interpretation of the charging instrument is especially implausible given that the State did, explicitly, charge the defendant in count III of the superseding indictment with pushing Mack on December 26. The circuit court even alluded to a lack of evidence supporting any charges stemming from the December 26 altercation when it issued a directed finding in the defendant's favor on count III. See *supra* ¶ 13.

¶ 27    Count I, on its face and unequivocally, charged the defendant with committing aggravated domestic battery on December 28, 2015. The photographs of Mack's extensive injuries and the evidence that Mack spent multiple days in the ICU with an acute subdural

7

hematoma would allow a rational trier of fact to conclude beyond a reasonable doubt that the defendant knowingly inflicted great bodily harm on Mack, a member of his household. *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007); see also 720 ILCS 5/12-3.2(a)(1) (West 2014); *id*. § 12-3.3(a). Further, as Mack testified that she did not have a knife on the night of December 27 into December 28, the question of self-defense on that night came to a credibility determination in her favor. We will not substitute our own judgment for that of the fact-finder on matters of witness credibility. *People v. Campbell*, 146 Ill. 2d 363, 375 (1992).

¶ 28        The existence of count II does not change our analysis. While the defendant assumed that the two felony charges must have referred to the two separate altercations, the facts adduced at trial could have supported multiple battery charges from December 28 alone. Mack testified that the defendant stomped on her foot, stomped on her surgically repaired knee, stomped or kicked her head multiple times, then punched her repeatedly in the face. Each of these distinct acts could have, at least potentially, supported individual aggravated domestic battery charges.

¶ 29        To be sure, the charging instrument alleged that the defendant "pushed" Mack on December 28, 2015, in committing aggravated domestic battery. No evidence was adduced that the defendant pushed Mack that night. As pushing—or any specific physical act—is not an essential element of aggravated domestic battery, the question is merely one of variance between the proofs at trial and the charging instrument. See *People v. Collins*, 214 Ill. 2d 206, 219 (2005). Such a variance is deemed fatal only where it is of a material nature and misleads a defendant in the presentation of his defense. *Id*.

¶ 30        The State on appeal suggests that a fatal variance argument is actually the argument that the defendant intended to make. In reply, the defendant denies making a fatal variance argument and insists that no challenge to the charging instrument is being raised. Rather, he maintains his

8

assumption that count I of the indictment referred to the December 26 incident. The defendant thus has not simply forfeited a fatal variance argument by not raising it, but has gone a step further in affirmatively declaring that he is *not* making that argument. Accordingly, we need not embark on that analysis. The evidence presented at trial was sufficient to find the defendant guilty beyond a reasonable doubt of aggravated domestic battery. We therefore affirm that conviction.

¶ 31                                                    B. *Krankel*

¶ 32            The defendant next contends that the circuit court's inquiry into his *pro se* claims of ineffective assistance of counsel was insufficient. Relatedly, he argues that the court's substantive decision to not appoint new counsel to examine his claims was erroneous.

¶ 33            Through *People v. Krankel*, 102 Ill. 2d 181 (1984), and its progeny, our supreme court has developed a procedural framework for the resolution of *pro se* posttrial claims of ineffective assistance of counsel. Where a defendant makes a posttrial claim of ineffective assistance of counsel, the circuit court must conduct a preliminary inquiry into those claims. *People v. Moore*, 207 Ill. 2d 68, 77 (2003). One goal of this preliminary inquiry is to allow the circuit court to create the necessary record for any claims raised on appeal. *People v. Jolly*, 2014 IL 117142, ¶ 38. If, after this preliminary inquiry, the court instead determines that there has been "possible neglect of the case," it must appoint new counsel to represent the defendant at a full hearing on his claims on ineffective assistance. *Moore*, 207 Ill. 2d at 78.

¶ 34            Our supreme court has described the preliminary *Krankel* procedure as follows:

> "During this evaluation, some interchange between the trial court and trial counsel regarding the facts and circumstances surrounding the allegedly ineffective representation is permissible and usually necessary in assessing what further

9

action, if any, is warranted on a defendant's claim. Trial counsel may simply answer questions and explain the facts and circumstances surrounding the defendant's allegations." *Id*.

¶ 35 "The issue of whether the circuit court properly conducted a preliminary *Krankel* inquiry presents a legal question that we review *de novo*." *Jolly*, 2014 IL 117142, ¶ 28. The substantive result of the *Krankel* inquiry—that is, the circuit court's decision not to appoint new counsel—is reviewed only for manifest error. *People v. Robinson*, 2017 IL App (1st) 161595, ¶ 90.

¶ 36 In the present case, the defendant made numerous posttrial claims of ineffective assistance of counsel, first in written form and then orally before the court. These claims included the allegation that the State had offered the defendant a plea, and that the defendant would have accepted the offer but for counsel's failure to relay it in a timely fashion. The circuit court broadly found that the defendant had failed to show possible neglect of the case, but did not specifically address the latter claim.

¶ 37 We find that the circuit court's *Krankel* procedure was deficient. Defense counsel has a duty to promptly and reasonably inform a defendant of any favorable plea offers made by the State. *Missouri v. Frye*, 566 U.S. 134, 145-46 (2012). Thus, the defendant's claims, if true, could form the basis of an ineffective assistance of counsel claim.

¶ 38 Certainly, the defendant's claim included a number of factual allegations from outside the record. The preliminary *Krankel* inquiry is intended precisely to put such facts *on* the record. *Jolly*, 2014 IL 117142, ¶ 38. To that end, our supreme court has noted that some exchange between the court and defense counsel is "usually necessary." *Moore*, 207 Ill. 2d at 78.

¶ 39 In this case, for instance, the court could have asked defense counsel if, in fact, the State made the favorable plea offer that the defendant claimed. If so, the court could have asked

10

defense counsel if he relayed the offer to the defendant, how long it took to do so, and how much time the defendant was given to consider it. Instead, the court asked no questions of defense counsel, who, as the record reflects, was in the courtroom at the time of the inquiry. Without eliciting any of this information from counsel, the defendant's allegations were unrebutted.

¶ 40       The State briefly argues that the court's deficient preliminary inquiry was harmless beyond a reasonable doubt. In support, the State asserts only that "[n]one of the motion's allegations alleged any colorable claim of ineffective assistance as the trial judge found." The State's lack of legal analysis accompanying that statement illustrates the issue. Because the circuit court declined to ask defense counsel a number of relevant questions relating to the factual underpinnings of the defendant's claim, neither this court, the circuit court, or the State can pass reasoned judgment on the merits of that claim.

¶ 41       For that same reason, our holding here is limited to the procedure employed in conduct of the preliminary inquiry. Because the circuit court failed to create a proper record, we cannot determine whether there was or was not possible neglect of the case, and therefore cannot consider whether manifest error was committed. We therefore vacate the circuit court's judgment denying the defendant's *pro se* claim and remand for a new preliminary *Krankel* inquiry before a different judge. *Jolly*, 2014 IL 117142, ¶ 46.

¶ 42                            III. CONCLUSION

¶ 43       The judgment of the circuit court of Will County is affirmed in part, vacated in part, and remanded with directions.

¶ 44       Affirmed in part and vacated in part; cause remanded with directions.

11