# Illinois Official Reports

## Supreme Court

---

### *People v. Jolly*, 2014 IL 117142

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JOHN WILLIE JOLLY, Appellant. |
| Docket No. | 117142 |
| Filed | December 4, 2014 |
| Modified upon denial of rehearing | January 28, 2015 |
| Held (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The common law developed from the 1984 *Krankel* decision provides that a *pro se* posttrial claim of ineffective trial assistance calls for appointment of new counsel if a factual inquiry shows possible neglect, but not if the claim lacks merit or pertains only to trial strategy; and, because new counsel is not appointed at this stage, prosecutorial participation, if any, should be only *de minimis*, and adversarial participation by the State against a *pro se* defendant called for the remand of a cocaine case for a new preliminary *Krankel* hearing without such participation and before a different judge. |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of McLean County, the Hon. Scott D. Drazewski, Judge, presiding. |
| Judgment | Reversed and remanded with instructions. |

| Counsel on Appeal | Michael J. Pelletier, State Appellate Defender, Karen Munoz and Jacqueline L. Bullard, Deputy Defenders, and Martin J. Ryan, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Springfield, for appellant. |
| | |
| | Lisa Madigan, Attorney General, of Springfield (Carolyn E. Shapiro, Solicitor General, and Michael M. Glick and Erica Seyburn, Assistant Attorneys General, of Chicago, of counsel), for the People. |
| | |
| Justices | JUSTICE KILBRIDE delivered the judgment of the court, with opinion. |
| | Chief Justice Garman and Justices Freeman, Thomas, Karmeier, Burke, and Theis concurred in the judgment and opinion. |

**OPINION**

¶ 1     This case arises in the context of a preliminary inquiry into a defendant's *pro se* posttrial allegations of ineffective assistance of trial counsel pursuant to this court's decision in *People v. Krankel*, 102 Ill. 2d 181 (1984). More specifically, this appeal requires us to resolve a conflict in the appellate court on the appropriate treatment of a circuit court's decision to allow the State's adversarial participation in a preliminary *Krankel* inquiry. The State concedes that the circuit court's decision to allow its adversarial participation is erroneous.

¶ 2     Here, defendant, John Willie Jolly, filed a *pro se* posttrial motion alleging ineffective assistance of trial counsel. Ultimately, the circuit court of McLean County conducted a preliminary *Krankel* inquiry on defendant's claims. In relevant part, the circuit court erroneously permitted the State to participate in an adversarial manner and relied on matters outside the record during that inquiry.

¶ 3     On direct appeal, the appellate court affirmed the trial court's denial of defendant's posttrial motion, concluding that the trial court's errors were harmless beyond a reasonable doubt. 2013 IL App (4th) 120981. For the reasons that follow, we reverse and remand.

¶ 4                                    BACKGROUND

¶ 5     In 2010, defendant was charged with unlawful delivery of a controlled substance. At his jury trial in the circuit court of McLean County, the State's evidence consisted largely of the testimony of Robbie Gunn, a 45-year-old confidential informant. Gunn, a self-admitted drug addict, had three felony convictions for delivery of a controlled substance. In June 2009, a Bloomington police detective arrested Gunn for selling illegal drugs. In exchange for the State's agreement to dismiss that charge and an unrelated misdemeanor drug charge, Gunn agreed to act as a confidential informant for controlled buys.

¶ 6        On March 18, 2010, Gunn arranged to buy cocaine from defendant, whom Gunn knew as "Bud." Gunn explained that he had dealt with defendant on multiple prior occasions, and he recognized defendant's voice and appearance. At the direction of a police detective, Gunn called defendant to purchase cocaine. Gunn agreed to purchase $50 worth of cocaine from defendant at their "normal spot" on Mulberry Street. Defendant arrived at the agreed upon location in a burgundy car, and Gunn purchased the cocaine through the passenger window of defendant's car. On cross-examination, Gunn explained that he did not wear a surveillance wire during the transaction, and he used his own cell phone to call defendant. Gunn admitted that working as a confidential informant was his only source of income during that time period.

¶ 7        The State also presented the testimony of the police officers involved in the operation. One officer observed defendant leave his residence at 1:41 p.m. in a car matching Gunn's description. Shortly thereafter, at 1:47 p.m., a second officer saw defendant arrive in the vehicle, and then saw Gunn briefly lean into the passenger window. After the sale was complete, police officers attempted to stop defendant's vehicle, but defendant drove away. The officers pursued defendant in unmarked squad cars with their lights and sirens activated. As defendant fled in his vehicle, the pursuing officers saw defendant throw out paper.

¶ 8        Police officers ended the vehicle pursuit for reasons of public safety, but they successfully apprehended defendant about 10 or 15 minutes later when another officer observed defendant exit his parked car. Defendant possessed a cell phone with a number matching the one called by Gunn. Officers also recovered the paper thrown from defendant's vehicle, and discovered that it was torn United States paper currency. Although the damaged currency could not be conclusively matched, the recovered pieces with partial serial numbers matched with numbers on the prerecorded currency that law enforcement provided to Gunn for the controlled buy. The parties stipulated that the substance that Gunn purchased from defendant weighed 0.1 gram and contained cocaine.

¶ 9        Defendant did not present any evidence. Following closing arguments, the jury found defendant guilty of delivery of a controlled substance. The circuit court sentenced defendant to 16 years' imprisonment as a Class X offender, based on his prior felony convictions.

¶ 10       On October 25, 2010, defendant filed a *pro se* motion, titled "Motion to Reduce Sentence." In addition to challenging his sentence, defendant challenged the effectiveness of his trial counsel. Specifically, defendant argued that his trial counsel was ineffective because counsel failed to: (1) move to reduce defendant's bond; (2) obtain defendant's consent before waiving his right to a speedy trial; (3) appear in court to represent defendant during one or more pretrial hearings; (4) provide defendant access to discovery materials; (5) discuss trial strategy with defendant or visit him; and (6) prepare to represent defendant at trial because counsel was preparing for another criminal case.

¶ 11       On November 19, 2010, the McLean County public defender's office filed a letter notifying the court that defendant's trial counsel was no longer a public defender contract attorney and that a new assistant public defender had been assigned.

¶ 12       On November 23, 2010, defendant filed a second *pro se* motion, titled "Motion to Amend the Motion to Reduce Sentence." In relevant part, defendant added new claims of ineffective assistance of trial counsel. Specifically, defendant argued that his trial counsel was ineffective for failing to: (1) object to the State's testimony on the recovered currency; (2) challenge Gunn's credibility; (3) challenge the sufficiency of the evidence; (4) object to the police

officer's testimony that defendant's voice was recorded; (5) object to the lack of testimony from experts on the State's exhibits, including the admission of cocaine; (6) file a motion to dismiss the charges for lack of evidence; and (7) file a motion to suppress the recovered cocaine and pieces of currency.

¶ 13 Following a hearing with defendant represented by new counsel from the public defender's office, the circuit court denied defendant's *pro se* motion to reduce sentence, finding that the sentence was not excessive. The court also rejected defendant's claims of ineffective assistance of trial counsel, finding those claims untimely. Alternatively, the court found that defendant's claims of ineffective assistance could be considered as plain error by the appellate court or pursued in a postconviction petition.

¶ 14 In the first direct appeal in this case, the appellate court reversed, holding that the trial court erred by failing to conduct any inquiry into defendant's claims of ineffective assistance of trial counsel. The court remanded the matter to the circuit court for a new hearing and preliminary inquiry under *Krankel*. *People v. Jolly*, 2012 IL App (4th) 110033-U.

¶ 15 On remand, the circuit court conducted a preliminary *Krankel* inquiry, the subject of the instant appeal. At the beginning of the hearing, the court allowed defendant's new attorney from the public defender's office to be excused from the proceeding. Thus, defendant proceeded *pro se* at the hearing.

¶ 16 Upon seeing defendant's original trial counsel, Mr. Welch, in the courtroom, the circuit court asked defendant whether he preferred that Welch leave the courtroom until he was needed to testify. Defendant replied that he did not want Welch present until he was needed.

¶ 17 The circuit court then explained to defendant that the preliminary inquiry under *Krankel* was intended to address defendant's claims of ineffective assistance that he raised in his two posttrial motions. The court opined that "there is no specific method that the reviewing courts, whether it [is] the Illinois Appellate or the Illinois Supreme Court, have defined as far as the manner in which this type of proceeding would be conducted." Nonetheless, the court explained that it would seek to keep the proceeding as "informal as possible recognizing that the ultimate determination is to make a good record" of the court's final ruling on those claims.

¶ 18 Next, the circuit court extensively reviewed each of defendant's claims and allowed defendant to explain each claim. During that exchange, however, the trial court repeatedly stopped defendant from making any argument on his claims. At one point, the court explained that its goal in the hearing was to "ascertain what the assertions of ineffective assistance are," but that "we are not here to go ahead and argue, that being the specific merits of [defendant's claims]."

¶ 19 When the circuit court finished questioning defendant about his claims, the court asked the State if it wanted to submit any evidence. More specifically, the court offered the State the opportunity to "rebut" defendant's claims but repeated its earlier observation that the proceeding was "not a full evidentiary hearing." The State replied affirmatively and indicated that they wanted to call Welch as a witness. The court agreed to let the State call Welch as a witness but prohibited defendant from cross-examining Welch because of the preliminary nature of the proceeding. The court again emphasized that the proceeding was not intended to be an evidentiary hearing, regardless of whether the court or the State questioned Welch.

¶ 20 After Welch was called and sworn in as a witness, the State questioned him at length on defendant's claims that he was ineffective. In answering the State's questions, Welch generally

rebutted or otherwise denied defendant's claims that he provided ineffective trial assistance. The State also solicited testimony from Welch explaining that he did not file a motion to reduce defendant's bond or a motion to suppress the recovered evidence because he did not believe those motions would have been successful. In response to the State's questioning, Welch also informed the court that he had substantial experience trying criminal cases, estimating that he had "handled" over 1,000 criminal cases in his 31-year career as an attorney. After the State finished questioning Welch, the circuit court also asked Welch questions about defendant's claims.

¶ 21    The circuit court then permitted the parties to present argument on whether a full evidentiary hearing under *Krankel* was necessary. Both parties presented brief arguments. Defendant, appearing *pro se*, contended that he was entitled to a full evidentiary hearing because he was denied a "proper trial" as a result of his counsel's ineffective assistance. The State countered that defendant failed to show that his counsel was ineffective and, therefore, was not entitled to a full evidentiary hearing on his claims.

¶ 22    At the close of the hearing, the circuit court reemphasized the preliminary nature of the proceeding and explained that it was not intended to be a full evidentiary hearing. When describing how it reviewed defendant's claims, the court stated that it considered the factual basis of the claims, the merit of the claims, whether the claims pertained to trial strategy, and whether they constituted ineffectiveness under the governing *Strickland* test. In addition, the court indicated that it would consider the statements of defendant and Welch, the court file, and its own observation of Welch's performance during defendant's trial. Last, and relevant to this appeal, the trial court also indicated that it would consider evidence not in the record. Specifically, the trial judge stated he would rely on his personal knowledge of Mr. Welch's work as an attorney in prior unrelated criminal cases. The judge explained that he was familiar with Mr. Welch's work "during that period of time that both of us were in the criminal felony division" and "would have had numerous encounters with one another." The court then ruled that it would not appoint new counsel or proceed to a full evidentiary hearing because each of defendant's allegations lacked merit or pertained to trial strategy.

¶ 23    On direct appeal, the appellate court affirmed. Although finding that the circuit court erred when it allowed the State to question Welch and considered Welch's conduct in other cases, the court concluded that those errors were harmless beyond a reasonable doubt. 2013 IL App (4th) 120981.

¶ 24    This court allowed defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. July 1, 2013).

¶ 25                                    ANALYSIS

¶ 26    On appeal, defendant argues that the circuit court's judgment must be reversed because the court failed to hold a proper preliminary *Krankel* hearing limited to investigating the factual basis for his claims and, instead, erroneously transformed the proceeding where he appeared *pro se* into an adversarial evidentiary hearing. Defendant also faults the circuit court for relying on matters outside the record, namely, the trial judge's experience with defendant's trial counsel in other criminal cases. Citing the appellate court's decision in *People v. Fields*, 2013 IL App (2d) 120945, defendant argues that it is not harmless error when the trial court permits the State's adversarial involvement in a preliminary *Krankel* hearing.

¶ 27 In response, the State concedes that the circuit court erred in permitting the State's adversarial participation in the preliminary inquiry and erred when it relied on matters outside the record. Nonetheless, the State argues that those procedural errors were harmless because the circuit court created a record sufficient for appellate review, the primary goal of a preliminary *Krankel* inquiry. Thus, the State contends that the appellate court here correctly determined that the errors made by the circuit court were harmless beyond a reasonable doubt because the record demonstrates that defendant's underlying claims of ineffective assistance of counsel lacked merit. The State cautions this court that accepting defendant's argument "would require this Court to classify procedural *Krankel* errors as 'reversible' or 'structural' errors." The State argues that reversible structural error is reserved to a narrow class of cases not including *Krankel*-related errors.

¶ 28 The issue of whether the circuit court properly conducted a preliminary *Krankel* inquiry presents a legal question that we review *de novo*. See *People v. Moore*, 207 Ill. 2d 68, 75 (2003). Similarly, we review *de novo* the legal question of whether harmless error applies to errors committed during a *Krankel* proceeding. See *Moore*, 207 Ill. 2d at 80-81; *People v. Nitz*, 143 Ill. 2d 82, 135 (1991).

¶ 29 The common law procedure developed from our decision in *Krankel* is triggered when a defendant raises a *pro se* posttrial claim of ineffective assistance of trial counsel. *People v. Krankel*, 102 Ill. 2d 181 (1984); *People v. Patrick*, 2011 IL 111666, ¶ 29. Under the rule developed from *Krankel* and its progeny, it is settled that new counsel is not automatically appointed when that type of claim is raised. *Moore*, 207 Ill. 2d at 77. Instead:

> "when a defendant presents a *pro se* posttrial claim of ineffective assistance of counsel, the trial court should first examine the factual basis of the defendant's claim. If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion. However, if the allegations show possible neglect of the case, new counsel should be appointed." *Moore*, 207 Ill. 2d at 77-78.

As this court has repeatedly recognized, the goal of any *Krankel* proceeding is to facilitate the trial court's full consideration of a defendant's *pro se* claims of ineffective assistance of trial counsel and thereby potentially limit issues on appeal. *Patrick*, 2011 IL 111666, ¶ 41; *People v. Jocko*, 239 Ill. 2d 87, 91 (2010).

¶ 30 The general subject of this appeal is the circuit court's preliminary *Krankel* inquiry. As we explained in *Moore*, "[d]uring this evaluation, some interchange between the trial court and trial counsel regarding the facts and circumstances surrounding the allegedly ineffective representation is permissible and usually necessary in assessing what further action, if any, is warranted on a defendant's claim." *Moore*, 207 Ill. 2d at 78. Thus, the trial court may inquire with trial counsel about the facts and circumstances surrounding the defendant's allegations. *Moore*, 207 Ill. 2d at 78. The court may also briefly discuss the allegations with defendant. *Moore*, 207 Ill. 2d at 78. Finally, the trial court is permitted to base its evaluation of the defendant's *pro se* allegations of ineffective assistance of counsel on its knowledge of defense counsel's performance at trial. *Moore*, 207 Ill. 2d at 79.

¶ 31 The specific question presented here is the proper resolution of errors made by the circuit court when conducting the preliminary *Krankel* hearing. The parties agree that the circuit court erred in permitting the State's adversarial participation in the preliminary inquiry when

defendant appeared *pro se*, and the court further erred in relying on matters outside the record, *i.e.,* its knowledge of Welch's performance in other criminal cases. The parties disagree, however, on how those errors should be addressed and whether they are harmless beyond a reasonable doubt.

¶ 32 We first address the circuit court's error in permitting the State's adversarial participation at the preliminary *Krankel* inquiry. We note that the parties' respective positions on this issue mirror a conflict in the appellate court. We now address that conflict.

¶ 33 Defendant directs our attention to the Appellate Court, Second District's decision in *People v. Fields*, 2013 IL App (2d) 120945. In *Fields*, the circuit court at the preliminary *Krankel* hearing permitted the State to argue against, or otherwise rebut, each of the defendant's claims of ineffective assistance of counsel. The State also made argument in support of defense counsel's explanations of his actions at the defendant's trial. *Fields*, 2013 IL App (2d) 120945, ¶¶ 22, 41.

¶ 34 The appellate court in *Fields* observed that case law did not suggest that the State should be an active participant in a preliminary *Krankel* inquiry. To the contrary, the *Fields* court observed that in most instances "virtually no opportunity for State participation is offered during the preliminary inquiry." *Fields*, 2013 IL App (2d) 120945, ¶ 40. Accordingly, the court concluded that the State should be limited to a *de minimis* role in the preliminary *Krankel* inquiry to limit the risk that the inquiry would be transformed into an adversarial proceeding with both the State and trial counsel opposing defendant. *Fields*, 2013 IL App (2d) 120945, ¶ 40. After reviewing the record, the appellate court in *Fields* concluded:

> "Where the trial court, at various times, allowed both defense counsel and the State to assert that defendant's claims warranted no further investigation, the hearing changed from one consistent with *Krankel* and its progeny to an adversarial hearing where defendant, without waiving his right to be represented, was forced, unrepresented, to argue the merits of his claims." *Fields*, 2013 IL App (2d) 120945, ¶ 41.

¶ 35 Ultimately, the *Fields* court rejected the State's argument that its improper adversarial participation in the preliminary *Krankel* inquiry was harmless when the trial court's reasoning for denying the defendant's ineffective assistance claims was correct. *Fields*, 2013 IL App (2d) 120945, ¶ 42. Rather, the *Fields* court decided to adopt the remedy used in other decisions when the preliminary *Krankel* hearing "morphed into an adversarial hearing with the State participating and the defendant appearing *pro se*," specifically, reversing and remanding to the circuit court for a new preliminary inquiry before a different judge without the State's adversarial participation. *Fields*, 2013 IL App (2d) 120945, ¶ 42 (citing *People v. Cabrales*, 325 Ill. App. 3d 1, 6 (2001)).

¶ 36 In contrast, the State relies on the Appellate Court, Fourth District's opinion in this case, reaching the opposite conclusion on analogous facts. 2013 IL App (4th) 120981.[1] As noted above, the circuit court here improperly allowed the State to participate in an adversarial role in the preliminary *Krankel* hearing while defendant appeared *pro se*. The circuit court also erred when it relied on matters outside the record when evaluating defendant's claims. 2013 IL App (4th) 120981, ¶¶ 51-54.

---

[1]On rehearing, the appellate court in this case acknowledged the contrary holding of *Fields* but "decline[d] to go so far based on the facts of this case." 2013 IL App (4th) 120981, ¶ 63.

¶ 37 Although finding that the circuit court erred in allowing the State's adversarial role and relying on matters outside the record during the preliminary *Krankel* inquiry, the appellate court here nevertheless found that the errors were harmless beyond a reasonable doubt. The court explained that the errors were harmless because the circuit court thoroughly examined the factual matters and questioned both defendant and his trial counsel in a fair and impartial manner. The court reasoned that the circuit court could have "easily denied defendant's request for new counsel based on its own investigation of the facts in open court." 2013 IL App (4th) 120981, ¶ 56. The appellate court also reviewed, and rejected, the merits of two specific claims of ineffective assistance of counsel raised by defendant on direct appeal. 2013 IL App (4th) 120981, ¶¶ 57-60.

¶ 38 Having carefully reviewed both decisions, we find that *Fields* better comports with our *Krankel* jurisprudence when a circuit court erroneously permits the State's adversarial participation at the preliminary inquiry. The common law procedure available under *Krankel* is intended to address fully a defendant's *pro se* posttrial claims of ineffective assistance of counsel and thus potentially limit issues on appeal. *Patrick*, 2011 IL 111666, ¶ 41; *Jocko*, 239 Ill. 2d at 91. By initially evaluating the defendant's claims in a preliminary *Krankel* inquiry, the circuit court will create the necessary record for any claims raised on appeal. See *Nitz*, 143 Ill. 2d at 134-35 (reviewing the record of the preliminary inquiry to assess defendant's claims on appeal); *Moore*, 207 Ill. 2d at 81 (explaining that failure to conduct a preliminary *Krankel* inquiry precludes appellate review). For these reasons, we believe that a preliminary *Krankel* inquiry should operate as a neutral and nonadversarial proceeding. Because a defendant is not appointed new counsel at the preliminary *Krankel* inquiry, it is critical that the State's participation at that proceeding, if any, be *de minimis.* Certainly, the State should never be permitted to take an adversarial role against a *pro se* defendant at the preliminary *Krankel* inquiry.

¶ 39 As *Fields* similarly determined, the purpose of *Krankel* is best served by having a neutral trier of fact initially evaluate the claims at the preliminary *Krankel* inquiry without the State's adversarial participation, creating an objective record for review. This goal, however, is circumvented when the circuit court essentially allows the State to bias the record against a *pro se* defendant during the preliminary *Krankel* inquiry. A record produced at a preliminary *Krankel* inquiry with one-sided adversarial testing cannot reveal, in an objective and neutral fashion, whether the circuit court properly decided that a defendant is not entitled to new counsel. See *Patrick*, 2011 IL 111666, ¶ 39 (noting that "*Krankel* serves the narrow purpose of allowing the trial court to decide whether to appoint independent counsel to argue a defendant's *pro se* posttrial ineffective assistance claims"). This, however, is precisely what occurred in this case.

¶ 40 Here, the circuit court permitted the State to question defendant and his trial counsel extensively in a manner contrary to defendant's *pro se* allegations of ineffective assistance of counsel and to solicit testimony from his trial counsel that rebutted defendant's allegations. In other words, the circuit court allowed the State to confront and challenge defendant's claims directly at a proceeding when defendant was not represented by counsel. The State also presented evidence and argument contrary to defendant's claims and emphasized the experience of defendant's trial counsel. Thus, as in *Fields*, the State and defendant's trial counsel effectively argued against defendant at a proceeding when he appeared *pro se*. As we explained above, this is contrary to the intent of a preliminary *Krankel* inquiry. Cognizant of

- 8 -

the rationale of *Krankel* and its progeny, we cannot conclude that the circuit court's error in this case was harmless beyond a reasonable doubt.

¶ 41    Although the parties agree that the circuit court committed further error in this case by relying on matters outside the record, we have concluded that the circuit court committed reversible error when it permitted the State to participate in an adversarial fashion during the preliminary *Krankel* inquiry. Consequently, we limit our holding in this case to that error.

¶ 42    The State's reliance on our decision in *People v. Nitz*, 143 Ill. 2d 82 (1991), in support of its harmless-error argument is misplaced. In *Nitz,* we held that the circuit court's failure to appoint new counsel for an evidentiary hearing under *Krankel* was harmless beyond a reasonable doubt. *Nitz*, 143 Ill. 2d at 135.

¶ 43    In stark contrast to this case, however, the circuit court in *Nitz* held a proper preliminary inquiry under *Krankel* and then concluded that an evidentiary hearing was warranted. The circuit court in *Nitz* erred, though, when it failed to appoint new counsel at the evidentiary hearing. After observing that the defendant's underlying ineffective assistance claims were rebutted by his proposed witnesses' testimony at that hearing, we concluded that the circuit court's error was harmless beyond a reasonable doubt. *Nitz*, 143 Ill. 2d at 134-35.

¶ 44    Unlike this case, in *Nitz* there was no concern with the adequacy of the record from the preliminary *Krankel* proceeding or with the manner in which the proceeding was conducted. Instead, the contested error in *Nitz* occurred during the second stage of the *Krankel* proceeding, when defendant was represented by counsel, and after the circuit court held a proper preliminary inquiry. Accordingly, we find that our decision in *Nitz* does not control the outcome of this case.

¶ 45    The State is concerned that our endorsement of *Fields* will constitute a new type of reversible structural error. The State's concern is unfounded. Notably, defendant has not argued in this case that the circuit court's error constituted structural error. Moreover, *Fields* did not find that the State's improper adversarial participation in a preliminary *Krankel* hearing was structural error.

¶ 46    Finally, we address the remedy in this case. As we have explained, the purpose of *Krankel* is best served by having a neutral trier of fact initially evaluate the claims at the preliminary *Krankel* inquiry without the State's adversarial participation, creating an objective record for review. Here, the State's improper adversarial participation at that inquiry effectively thwarted that purpose. We thus believe the appropriate remedy is to remand for a new preliminary *Krankel* inquiry before a different judge and without the State's adversarial participation. *Fields*, 2013 IL App (2d) 120945, ¶ 42.

¶ 47                                  CONCLUSION

¶ 48    The circuit court erred when it allowed the State's adversarial participation in the preliminary *Krankel* inquiry. For the reasons explained above, we reverse the appellate court's judgment finding that error harmless beyond a reasonable doubt. We remand the cause to the circuit court with instructions.

¶ 49    Reversed and remanded with instructions.