NOTICE

Decision filed 09/28/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 170165-U

NO. 5-17-0165

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 14-CF-1126 |
| | ) | |
| TURHAN ROBINSON, | ) | Honorable |
| | ) | Neil T. Schroeder, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Presiding Justice Welch and Justice Overstreet concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Because, during the trial judge's preliminary *Krankel* inquiry, the trial judge did not consider each of the defendant's *pro se* ineffective assistance of counsel claims prior to deciding not to appoint new counsel for the defendant, we vacate the order denying the defendant's trial counsel's motion to withdraw and remand for a legally sufficient preliminary *Krankel* inquiry in which each claim is adequately considered.

¶ 2   The defendant, Turhan Robinson, has filed this direct appeal following his convictions and sentences, in the circuit court of Madison County, for first degree murder and armed robbery. For the following reasons, we vacate the trial judge's denial of the defendant's trial counsel's motion to withdraw and remand for a legally sufficient preliminary *Krankel* inquiry at which the trial judge adequately assesses each of the defendant's *pro se* claims of ineffective assistance of counsel.

1

¶ 3                          I. BACKGROUND

¶ 4    Although the record on appeal in this case is voluminous, the facts necessary to our disposition of the narrow issue raised by the defendant in this appeal are relatively straightforward, and follow. The defendant was convicted, following a jury trial, of one count of first degree murder and one count of armed robbery, for his role in the May 19, 2014, robbery and murder of Kenneth Deal in Madison. During a February 3, 2017, posttrial hearing, the defendant, when given the opportunity to speak, first took issue with what he believed to be the unfair manner in which he had been treated by the trial judge in this case. The defendant thereafter stated that he wanted "to talk about" his appointed trial counsel. The transcript from the hearing reveals that the defendant then made three complaints that were clearly directed at trial counsel: (1) the defendant had informed trial counsel that he did not wish for a certain juror to be seated, because that juror knew the family of the victim and two other witnesses the defendant wished to call, but that trial counsel did not effectively question that potential juror; (2) trial counsel did not effectively cross-examine witness Bruce Walker, after Walker, according to the defendant, "changed his whole story around" when testifying; and (3) trial counsel did not present DVD evidence that purportedly would have helped the defendant, such as a video showing a hat fly out of the car the murderers were driving, which the defendant contended contained DNA evidence that would have exonerated him.

¶ 5    The defendant then appeared to shift back to his critique of the trial judge, noting that the defendant had filed a handwritten motion to have his DNA tested, and stating: "You didn't test it. You want to know why? Because you know it ain't mine. There ain't no DNA on it. Remember you was the same one that say, oh, when John Fischer got right there and he said they got one up on you. This ain't no game show. How you mean they got one up on me? I don't understand. Judges don't talk like that." The defendant then clearly continued with his complaints against the trial judge. Thereafter, he complained that trial counsel was "showing off" in his opening

statement, in a manner that was detrimental to the defendant. He then made additional complaints, although it is often difficult to tell, from the written transcript of the hearing, whether those complaints were directed at the trial judge, trial counsel, or both. Despite his repeated commingling of the trial judge and trial counsel—as witnessed by statements from the defendant such as "[y]ou guys" and "[b]ecause that's what you all do"—several additional complaints were clearly directed at the performance of trial counsel, to wit: (1) trial counsel did not effectively examine witness Justin Hall, (2) trial counsel "quoted Federal law" at some points, (3) trial counsel did not call and question Officer Brian Werner as a witness about alleged inconsistencies in Werner's grand jury testimony, (4) trial counsel did not point out a purported inconsistency in the testimony of Walker (it is not clear if this inconsistency was part of what the defendant earlier referred to, in general terms, as Walker changing his story while testifying), (5) trial counsel did not object to inaccuracies in the State's closing argument, and (6) in trial counsel's own closing argument, he referred to the murder as "stupid," to the detriment of the defendant. Thereafter, the defendant took further issue with the behavior of the trial judge, as well as the State.

¶ 6    Trial counsel subsequently noted that the defendant appeared to be "very dissatisfied" with trial counsel's performance, and asked the trial judge whether he should be allowed to withdraw. The trial judge again gave the defendant the opportunity to weigh in. The defendant, *inter alia*, clearly directed the following additional complaints at trial counsel's performance: that trial counsel (1) was not adequately prepared for trial, (2) did not conduct an adequate investigation prior to trial, and (3) should have had co-counsel, given the serious nature of the charges against the defendant. Following a recess, the trial judge stated to the defendant, "[W]hat I am going to ask you to do is put your complaints regarding [trial counsel], the reason you believe he was ineffective, in writing and file it, and I will delay the sentencing, and we can have a hearing on

3

that. Will you do that?" The defendant replied, "Yep, I sure will." The trial judge encouraged the defendant to file his complaints as quickly as possible, so that a hearing on them could be held.

¶ 7 Approximately two weeks later, on February 21, 2017, the subsequent hearing was held. The trial judge began the hearing by noting that although the defendant had agreed to put his complaints in writing and file them—and that the defendant appeared, at the previous hearing, to have the complaints in some kind of written form already, and to be reading them—the trial judge had not received any such filing, and so had requested and received a transcript of the earlier hearing, which he had provided to the defendant's trial counsel and to the State. Trial counsel and counsel for the State acknowledged receipt of the transcript. The trial judge then stated that he believed the defendant's complaints at the previous hearing had triggered the need for a *Krankel* hearing. The trial judge added that he had "read through [the defendant's] statement that he made and he raised several issues. I'm going to address some of them." He thereafter discussed the following points with trial counsel: (1) the reasons trial counsel allowed the potential juror about whom the defendant objected to be seated (trial counsel responded that it was because she was one of the few potential African American jurors, and trial counsel wanted as many African American jurors to be seated as possible; also, because trial counsel did not believe that anything the potential juror said in *voir dire* caused him to believe she was biased against the defendant—both of which were what trial counsel deemed "matter[s] of strategy" that he said he stood by at the present hearing), (2) DNA testing of the hat (trial counsel stated that he believed a hat had been recovered, but did not know if it could be tied to the car, or proved to be the same hat that was thrown from the car; he added, "I don't know that it was tested or that it was in fact revealed that it did not have the defendant's DNA on it"), and (3) the cross-examination of Justin Hall (trial counsel agreed with the trial judge that counsel did in fact cross-examine Hall about the issue about which the defendant complained).

4

¶ 8    The trial judge then asked the defendant for clarification as to who the defendant was referring to when he complained in the previous hearing of "a confidential informant" being used in the case. The defendant replied, "I plead the 5th, your Honor. Well, we'll continue this hearing when I get to the penitentiary and I put things in motion." The trial judge responded, "All right. So you're basically telling me you're not going to answer any of my questions at this point? Is that what you're telling me, Mr. Robinson? I'm going to take your silence as an indication that that is what you're telling me."

¶ 9    The trial judge then addressed the following additional points that were raised by the defendant in the previous hearing: (1) trial counsel's citation to federal law (which the trial judge stated was not inappropriate, because federal law could sometimes provide guidance in a state-court trial), (2) the allegation that some DVD evidence was tampered with (trial counsel stated, in response to questioning from the trial judge, that he did not believe any DVD evidence had been tampered with), and (3) trial counsel's cross-examination of Walker (trial counsel and the trial judge agreed that trial counsel had cross-examined Walker about the issues about which the defendant complained). The trial judge then stated, "So having received those answers, the Court finds that the claims of ineffective assistance of counsel are either spurious and don't have any basis whatsoever or pertain only to trial strategy. So I do not find that it's necessary to appoint Mr. Robinson a separate counsel to pursue in [*sic*] ineffective assistance of counsel claims against [trial counsel] based on what" the defendant said at the earlier hearing. He allowed trial counsel to be heard on one additional point, at which time trial counsel defended his performance at the trial in general. The trial judge then stated, "Well, I would also say that based on my observations of [trial counsel's] performance during this case, I didn't see anything that I thought was inappropriate or fell below the standard that an attorney is required to provide. And the Court's taking into account

5

the *Strickland* standard in coming to that conclusion." He added that trial counsel's motion to withdraw was "denied based on the Court's ruling following the *Krankel* inquiry."

¶ 10    The case proceeded to sentencing. The defendant was sentenced to 47 years on the first degree murder conviction to be served at 100%, and 33 years on the armed robbery conviction, to be served consecutively to the murder sentence, and at 85%, with both sentences to be followed by a period of mandatory supervised release. A motion to reconsider sentence was filed, argued, and denied. This timely appeal followed.

¶ 11                              II. ANALYSIS

¶ 12    On appeal, the defendant contends, *inter alia*, that because the trial judge failed to address each of the defendant's *pro se* claims of ineffective assistance of counsel, this court should remand for a sufficient preliminary *Krankel* inquiry in which each of those claims is addressed, so that the trial judge can properly assess whether new counsel should be appointed to represent the defendant at the trial court level with his ineffective assistance of counsel claims. Specifically, the defendant points out that at no time did the trial judge address or assess the following *pro se* claims of ineffective assistance of counsel that were raised by the defendant: (1) that trial counsel was not adequately prepared for trial, (2) that trial counsel did not properly investigate the case prior to trial, and (3) that due to the complexity of the case, trial counsel should have requested the assistance of co-counsel. We note as well that, although not emphasized by the defendant in his briefs on appeal, the trial judge also did not address the defendant's claims that his trial counsel failed to object to inaccuracies in the State's closing argument, and that his trial counsel delivered a closing argument that was actually detrimental to the defendant. In addition to noting the claims the trial judge did not address at all, the defendant also points to many instances in the record that he alleges demonstrate that trial counsel was ineffective, and that rebut, on the merits, the trial

6

judge's conclusion—based upon the claims the trial judge did examine—that it was not necessary to appoint new counsel to represent the defendant on the defendant's *pro se* claims.

¶ 13    We begin our analysis of the defendant's claims with our standard of review. The question of whether a trial judge conducted a proper, legally sufficient preliminary *Krankel* inquiry is one that this court reviews *de novo*. See, *e.g.*, *People v. Roddis*, 2020 IL 124352, ¶ 33. Our review of the trial court proceedings should "adhere to a case-by-case, fact-specific examination, driven by the record." *Id*. ¶ 64. Several general principles of law of significance to preliminary *Krankel* inquiries are relevant to the issue raised by the defendant in this appeal. We therefore begin by noting the fundamental principle that when, posttrial, a defendant raises *pro se* contentions of ineffective assistance of counsel, the common law procedure that has evolved from the Illlinois Supreme Court's decision in *People v. Krankel*, 102 Ill. 2d 181 (1984), is triggered. See, *e.g.*, *People v. Jolly*, 2014 IL 117142, ¶ 29. "[T]he goal of any *Krankel* proceeding is to facilitate the trial court's full consideration of a defendant's *pro se* claims of ineffective assistance of trial counsel and thereby potentially limit issues on appeal." *Id*. During a preliminary *Krankel* inquiry, the trial judge should first examine the factual basis of the defendant's claim or claims, and if the judge concludes the claim or claims lack merit or pertain only to matters of trial strategy, then the judge need not appoint new counsel and may deny the defendant's *pro se* motion. *Id*. On the other hand, if the defendant's *pro se* allegations show possible neglect of the case by counsel, new counsel should be appointed to represent the defendant at the trial court level with regard to the allegations. *Id*.

¶ 14    In the frequently cited case of *People v. Moore*, 207 Ill. 2d 68, 78 (2003), the Illinois Supreme Court discussed some of the procedures often employed in legally sufficient preliminary *Krankel* inquiries, noting that, *inter alia*, "some interchange between the trial court and trial counsel regarding the facts and circumstances surrounding the allegedly ineffective representation

7

is permissible and usually necessary in assessing what further action, if any, is warranted on a defendant's claim." The *Moore* court noted that "[t]rial counsel may simply answer questions and explain the facts and circumstances surrounding the defendant's allegations," and that "[a] brief discussion between the trial court and the defendant may be sufficient" as well. *Id*. The court added that "[a]lso, the trial court can base its evaluation of the defendant's *pro se* allegations of ineffective assistance on its knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations on their face." *Id*. at 79. These general procedures notwithstanding, the *Moore* court emphasized that "[t]he law requires the trial court to conduct some type of inquiry into the underlying factual basis, if any, of a defendant's *pro se* posttrial claim of ineffective assistance of counsel," and that if such an inquiry does not occur, the cause must be remanded to the trial court for an adequate preliminary *Krankel* inquiry. *Id*. As the Illinois Supreme Court recently reiterated, "*Moore* establishes a minimum threshold for the court's *Krankel* consideration," and "holds that, at the least, a consideration of the facts is necessary." *Roddis*, 2020 IL 124352, ¶ 54; see also *id*. ¶ 66 (inquiry was adequate because trial judge "addressed each allegation with defendant before finding the claims conclusory"). This court, too, has held that a trial judge "must examine the factual matters underlying a defendant's *pro se* claim of ineffective assistance of trial counsel" (*People v. Sanchez*, 329 Ill. App. 3d 59, 66 (2002)), and that the failure to consider the defendant's *pro se* claims requires remand for an adequate preliminary *Krankel* inquiry (*id*. at 66-67).

¶ 15    In this case, the State fails to respond to the defendant's argument that for a preliminary *Krankel* inquiry to be legally sufficient, a trial judge must, at the very least, address all, rather than only some, of a defendant's *pro se* claims prior to concluding that new counsel need not be appointed. Thus, although the State's position on appeal with regard to this issue is not—due to the State's silence—clear, the State's position appears to be that a trial judge, in reaching the

decision during a preliminary *Krankel* inquiry not to appoint new counsel, has the discretion to pick and choose which of a defendant's *pro se* ineffective assistance of counsel claims the trial judge addresses in reaching that decision, and may effectively ignore any claims that the trial judge does not want to address, or that the judge inadvertently overlooks. This is not the law, and for good reason: at the risk of stating the obvious, we note that it would defy reason to conclude that a trial judge could accurately determine that new counsel need not be appointed to pursue a defendant's *pro se* claims of ineffective assistance of counsel if the trial judge has based that determination upon an examination of only some, rather than all, of the *pro se* claims raised by the defendant.[1] The State's position is especially troubling where, as here, the trial judge clearly stated on the record that he was going to evaluate "some" of the defendant's claims, rather than stating that he would evaluate all of them. In light of this, it is simply impossible to know if the trial judge would have reached the same conclusion—not to appoint new counsel for the defendant—if the trial judge had evaluated all of the defendant's claims, particularly the claims that were outside the knowledge of the trial judge based upon the trial judge's observation of the trial, such as the level of investigation and preparation by trial counsel prior to the trial.

¶ 16    As noted above, the Illinois Supreme Court has held that "the goal of any *Krankel* proceeding is to facilitate the trial court's full consideration of a defendant's *pro se* claims of ineffective assistance of trial counsel and thereby potentially limit issues on appeal." *Jolly*, 2014 IL 117142, ¶ 29. Again at the risk of stating the obvious, if a trial judge does not address each of the defendant's *pro se* claims when making the decision not to appoint new counsel, the trial judge has not given "full consideration" to the defendant's claims, and has not achieved the goal of

---

[1]To be clear, the issue in this appeal is whether a trial judge must address all, rather than only some, of a defendant's *pro se* claims prior to deciding *not to* appoint new counsel for the defendant; because the issue is not before us, we do not decide whether a trial judge must address all, rather than only some, of a defendant's *pro se* claims prior to deciding *to* appoint new counsel.

9

potentially limiting the issues that may be raised on appeal. Thus, although a harmless error analysis such as that requested by the State in this case may apply to claims actually considered by the trial judge, and under extraordinary circumstances (such as where the claims are demonstrably fantastical or clearly rebutted by the record) might apply to claims not considered by the trial judge, we decline in this case to apply such an analysis to the defendant's claims, which included matters that are beyond the record in this case, and beyond the knowledge the trial judge would have gained by observing trial counsel's performance at trial.

¶ 17 That said, we recognize the difficult position in which the trial judge found himself in this case, particularly because of the defendant's confusing, rambling, and often commingled, attacks on both the trial judge and trial counsel at the first hearing, as well as the defendant's subsequent refusal to cooperate in the trial judge's attempts to understand and resolve the defendant's claims. However, the State has not put forward any argument that the particular facts of this case could be construed in such a manner as to justify the trial judge's failure to address each of the defendant's *pro se* claims prior to denying the defendant's trial counsel's motion to withdraw. Thus, the State has forfeited consideration of any such contention. See, *e.g.*, *People v. Artis*, 232 Ill. 2d 156, 178 (2009) (rules of forfeiture in criminal proceedings apply to State as well as to defendant). Accordingly, in light of the State's forfeiture, and silence, regarding this issue on appeal—and in light of the untenability of the position the State appears to take instead—we remand for a new preliminary *Krankel* inquiry.

¶ 18                                       III. CONCLUSION

¶ 19 For the foregoing reasons, we vacate the trial judge's denial of the defendant's trial counsel's motion to withdraw and remand for an adequate preliminary *Krankel* inquiry.

¶ 20 Order vacated; cause remanded.