NOTICE
Decision filed 12/11/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 240442-U

NO. 5-24-0442

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 18-CF-2336 |
| | ) | |
| ARTHUR E. SMALLWOOD, | ) | Honorable |
| | ) | Kyle A. Napp, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE SHOLAR delivered the judgment of the court.
Justices Welch and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*: Following a *Krankel* hearing, the trial court properly found that defendant's ineffective-assistance claims involved matters of trial strategy. As any argument to the contrary would lack merit, we grant defendant's appointed counsel on appeal leave to withdraw and affirm the circuit court's judgment.

¶ 2    Following a jury trial, defendant, Arthur E. Smallwood, was found guilty of attempted first degree murder and sentenced to life in prison. On appeal, this court held that the trial court did not adequately inquire into defendant's posttrial allegations that counsel was ineffective. Following remand, the court appointed new counsel and conducted a hearing on those allegations. Following the hearing, the court concluded that defendant's allegations involved strategic considerations and, accordingly, he could not establish that counsel was ineffective. Defendant again appealed. His appointed appellate counsel, the Office of the State Appellate Defender (OSAD), concludes that

1

there is no reasonably meritorious argument that the court erred. Accordingly, it has filed a motion for leave to withdraw as counsel on appeal and a supporting memorandum. See *Anders v. California*, 386 U.S. 738 (1967). OSAD has notified defendant of its motion. This court has provided him with an opportunity to respond but he has not done so. After considering the record on appeal, OSAD's motion and supporting memorandum, we agree that there is no issue that could support an appeal. Accordingly, we grant OSAD leave to withdraw and affirm the trial court's judgment.

¶ 3                              BACKGROUND

¶ 4      Defendant was charged with attempted murder and aggravated battery for a knife attack on cabdriver Jon-Eric Andersson. The State later dismissed the aggravated battery charge.

¶ 5      Evidence at trial showed that, around 9:30 p.m. on August 8, 2018, an African American man between 40 and 50 years old entered Bubby & Sissy's bar in Alton and asked the bartender to call a cab for him. The bartender, Jason Brooks, called the cab and the man went outside to wait for the cab.

¶ 6      Andersson, a cab driver for Alton's Best Cabs (ABC), picked up the fare. The passenger sat in the right rear seat. Andersson did not get a good look at the passenger but described him as an African American between 40 and 50 years old. The passenger asked to go to 1209 Atwood. When they arrived, the passenger slid across the seat, grabbed Andersson around the neck from behind, and told him not to do anything. Andersson instinctively pushed the passenger's hand away and the passenger responded by stabbing him.

¶ 7      Andersson began driving fast and swerving to get the man to stop. The passenger screamed for Andersson to let him out. Andersson stopped the cab and the passenger ran out. He believed

the man wanted to kill him. Andersson called the cab company dispatcher and told him what had happened. He then drove himself to a hospital.

¶ 8    Andersson was transferred to Jewish Hospital in St. Louis where the treating physician identified 15 stab wounds to his back, neck, and shoulders. The cab company manager reported that he had received an inquiry earlier in the day from "Datwon Smallwood" about cab fares. Datwon was a nickname associated with defendant.

¶ 9    Detective Andrew Pierson obtained video from the bar that showed a man wearing a baseball cap walk in and speak to Brooks. The man's hat was similar to one found inside the cab. Pierson showed Brooks a photo lineup that included defendant, and Brooks identified him with 70-80% certainty.

¶ 10    After obtaining the video, Pierson went to the Atwood address and noticed that the house was empty and under construction. He also learned that defendant's address was on West 9th Street. The owner of the Atwood house, Dwight Chavours, confirmed that no one lived there on August 8, 2018. He noted that defendant had done some construction work there a few days earlier. Gene Williams said that he had seen defendant at the house a month or two before the incident.

¶ 11    In closing, the State argued that the location and number of stab wounds were evidence of defendant's intent to kill Andersson. The State also argued that identity was not in question as Brooks identified defendant and circumstantial evidence pointed to him. The defense argued that Brooks was only 70 to 80% certain and that the nature of the wounds did not prove an intent to kill. The defense argued that the perpetrator only began stabbing Andersson to escape the cab due to his erratic driving.

¶ 12    The jury found defendant guilty. Because he had two prior convictions of Class X felonies, a natural-life sentence was mandatory. The defense argued, however, that the statute mandating a

natural-life sentence was unconstitutional as applied to defendant given his difficult upbringing and history of mental illness.

¶ 13    In allocution, defendant stated that he was sorry for what happened to Andersson but that the man responsible for the crime was Antonio Perkins. Defendant claimed that Perkins used his tablet on August 8, 2018, to request the price for a cab ride, and that Perkins had previously broken into the Atwood address to steal a flat screen TV. Defendant contended that he and Perkins went to Bubby & Sissy's together, but Perkins went back inside to have the bartender call for a cab while defendant waited outside. After Perkins got into the cab and left, defendant walked towards Ninth Street. He saw Charles Sanders drive past him as he walked home.

¶ 14    Defendant said that he told his lawyer the story about Perkins and Sanders and that Perkins used to work at ABC Cab. He also informed counsel that his "roommate," Katie Hurt, and his brother, Leon Smallwood, would have provided him with an alibi. However, counsel did not call any of these witnesses at trial.

¶ 15    The trial court, recognizing that defendant had raised an ineffective-assistance claim, conducted a *Krankel* hearing. See *People v. Krankel*, 102 Ill. 2d 181 (1984). In response to the court's queries, defendant reiterated his claims that counsel failed to call potential witnesses or cross-examine the State's witnesses. Defendant also said that counsel did not have the cap found in the cab tested for DNA.

¶ 16    Defendant's counsel, Tyler Bateman, said that

" '[Defendant] has told me a variety of things, and based on some things he told me I had my investigator interview certain people and made decisions based on that and also what the law is in terms of presenting so and so did it, who to call and who not to call. I don't know that I necessarily talked to everybody that he mentioned, because maybe what he told

4

me wasn't going to be relevant one way or the other. But based on the evidence I did the investigation through my investigator I thought was appropriate. I think he indicated to you that we talked to Mr. Perkins who he seems to say did the case. And I think he indicated to you what Mr. Perkins told us, which probably was absolutely no reason for me to subpoena Mr. Perkins. A variety of other things I probably decided had no relevance as to whether or not he was the perpetrator. I tried the case in the fashion based on what he told me was the best fashion to try the case, not necessarily what would have been the best fashion to try the case, but based on what he told me at various times, I also should say that.' " *People v. Smallwood*, 2022 IL App (5th) 190416-U, ¶ 39.

The court concluded that defendant's claims required no further action.

¶ 17      The court found that application of the mandatory sentencing statute was appropriate and sentenced defendant to natural-life imprisonment. Defendant appealed.

¶ 18      On direct appeal, we rejected defendant's arguments that the evidence was insufficient, the State's closing argument was improper, and counsel should have highlighted certain portions of the medical records admitted in evidence. However, we held that the trial court's *Krankel* hearing was inadequate and remanded the cause for a further hearing. *Id.* ¶¶ 88-90.

¶ 19      Following remand, the trial court appointed new counsel who filed a formal motion presenting defendant's claims. At a hearing, new counsel questioned Bateman about the witnesses defendant had identified. Bateman said that his investigator, Keagan Clutter, interviewed the witnesses, but Bateman concluded that none could have provided any testimony useful to the defense.

¶ 20      Hurt, defendant's roommate at the time, told Clutter that defendant called her at home at 10:30 on the night of the offense. Bateman noted that discovery documents showed that the cab

5

company called 9-1-1 at 10:13 p.m., meaning that the offense had been completed by then. Thus, Hurt could not provide an alibi for the time of the offense.

¶ 21 Chavours told Clutter that he could not provide any information about defendant's case. He knew that Perkins was on the run for shooting someone in 2018. But Chavours was aware of no connection between defendant and Perkins.

¶ 22 Leon Smallwood affirmed that he did contact defendant via FaceTime that evening. However, it was after the police had come to his house to investigate the incident.

¶ 23 When Clutter contacted Sanders, the latter essentially denied everything defendant had said. Specifically, he denied having seen defendant the night of the incident.

¶ 24 Bateman was also asked about the baseball cap found in the cab after the offense. Bateman believed that "the best way to use that was things not done by the police since the State has the burden" of proof.

¶ 25 The court questioned Bateman about Perkins. Bateman said that Perkins had been incarcerated in Minnesota. However, Clutter was able to interview him at the county jail, where he was awaiting trial for another offense. Perkins denied any involvement in the present offense.

¶ 26 The court found that Bateman had contacted all the proposed witnesses and made strategic decisions not to call them. His representation of defendant was otherwise zealous. The court thus denied defendant's motion. Defendant timely appealed.

¶ 27                                    ANALYSIS

¶ 28 OSAD concludes that there is no reasonably meritorious argument that the court erred in denying defendant's motion following the renewed *Krankel* hearing. OSAD observes that Bateman, through Clutter, contacted the proposed witnesses and that their testimony would not have aided the defense. Thus, his failure to call the witnesses was the result of strategic decisions.

¶ 29    " 'To establish that a defendant was deprived of effective assistance of counsel, [he] must establish both that his attorney's performance was deficient and that the defendant suffered prejudice as a result.' " *People v. Manning*, 227 Ill. 2d 403, 412 (2008) (quoting *People v. Pugh*, 157 Ill. 2d 1, 14 (1993)).

¶ 30    The common law procedure provided in *Krankel* is triggered when a defendant raises a *pro se* posttrial claim of ineffective assistance of trial counsel. *People v. Jolly*, 2014 IL 117142, ¶ 29 (citing *Krankel*, 102 Ill. 2d 181). When a defendant raises a claim sufficient to trigger a *Krankel* hearing, the court should first examine the claim's factual basis. *Id.* " 'If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, [it] need not appoint new counsel and may deny the *pro se* motion. However, if the allegations show possible neglect of the case, new counsel should be appointed.' " *People v. Jackson*, 2020 IL 124112, ¶ 97.

¶ 31    In conducting this evaluation, the court may inquire into the circumstances of the alleged ineffective assistance from counsel or defendant. *People v. Crutchfield*, 2015 IL App (5th) 120371, ¶ 29. The court can base its determination on "its knowledge of the defense counsel's performance at trial and the insufficiency of defendant's allegations on their face." *Id.*

¶ 32    There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and that the challenged action or inaction was the product of sound trial strategy. *Id.* ¶ 34 (citing *Strickland v. Washington*, 466 U.S. 668, 689 (1984)). Decisions regarding which witnesses to call and what evidence to present are generally matters of trial strategy that cannot form the basis of an ineffective assistance of counsel claim. *Id.*

¶ 33    However, trial counsel is required to "independently investigate any possible defense," and the failure to investigate can amount to ineffective assistance. *People v. Domagala*, 2013 IL 113688, ¶ 38. Counsel is given great deference in his or her investigation decisions, and we judge

7

the decision against a standard of reasonableness. *Id.* As such, counsel must conduct reasonable investigations or make a reasonable decision that a particular investigation is unnecessary. *Id.*

¶ 34    Here, Bateman testified that Clutter spoke with each of the proposed witnesses. Based on their responses, he concluded that they would not have provided any testimony helpful to the defense and, thus, made strategic decisions not to call them. He further explained that he believed the best way to deal with the baseball cap was to argue that the State could have had it tested but did not. Of course, had the cap been tested and found to contain defendant's DNA, this would have helped the State's case immeasurably. In summary, the court properly found that Bateman contacted all the proposed witnesses, none of whom would have helped the defense. His decisions not to call any of the proposed witnesses were thus matters of trial strategy that were virtually immune from scrutiny.

¶ 35                              CONCLUSION

¶ 36    As this appeal presents no issue of arguable merit, we grant OSAD leave to withdraw and affirm the circuit court's judgment.


¶ 37    Motion granted; judgment affirmed.