NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241438-U

NO. 4-24-1438

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 18, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Peoria County |
| WILLIE LEE SCOTT, JR., | ) | No. 21CF403 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John P. Vespa, |
| | ) | Judge Presiding. |

JUSTICE GRISCHOW delivered the judgment of the court.
Justices Steigmann and Zenoff concurred in the judgment.

**ORDER**

¶ 1 *Held*: The appellate court remanded for the trial court to conduct a preliminary inquiry into defendant's *pro se* posttrial claim of ineffective assistance of counsel.

¶ 2 Defendant, Willie Lee Scott, Jr., was convicted of home invasion (720 ILCS 5/19-6(a)(2) (West 2020)) and sentenced to 26 years' imprisonment. Defendant appealed, arguing (1) his statutory right to a speedy trial was violated, (2) he was not proven guilty of home invasion beyond a reasonable doubt, (3) he was denied a fair trial because the jury was not properly instructed, and (4) the trial court considered improper factors when sentencing him. Defendant also contends the court erred in failing to conduct a proper inquiry into his *pro se* claims of ineffective assistance of counsel. We agree with defendant's last contention and, because we find it dispositive for purposes of resolving the instant appeal, limit our discussion of the underlying facts to that particular claim.

¶ 3                                     I. BACKGROUND

¶ 4          Defendant was charged with two counts of home invasion (*id.*) for an incident that occurred on August 29, 2020. Count I was later dismissed, and the State proceeded to trial on count II. At defendant's jury trial, Thea Hartzler, the victim of the home invasion, testified she heard a knock on her side door at approximately 8:10 a.m. on August 29, 2020. She assumed it was her neighbor, so she unlocked the door. A stranger forced his way into her kitchen and pointed a black gun at her head. After a struggle, Hartzler was able to escape from the intruder. The intruder drove away in a black four-door car. Hartzler identified defendant as the intruder in a photographic lineup and in court.

¶ 5          Jerry Bryant testified he was walking his dog in the neighborhood on the morning of August 29, 2020, and he saw a vehicle that he did not recognize. Bryant went over to the vehicle and spoke to the driver. Bryant thought the male was acting strange, so Bryant noted the license plate number. Later, Bryant wrote down the license plate number as he remembered it, and it was reported to the police. Bryant did not make an identification in the photographic lineup.

¶ 6          Matt Mocilan, a sergeant with the Peoria Police Department, testified he investigated the reported home invasion. From his canvas of the neighborhood and footage from a Ring camera and nearby business security cameras, Sergeant Mocilan testified he identified a suspect vehicle, a four-door black sedan with chrome on the pillar. From that information, Sergeant Mocilan was able to identify defendant as a suspect in the home invasion.

¶ 7          The jury found defendant guilty of home invasion. Defense counsel filed a motion for a new trial, or, in the alternative, a judgment notwithstanding the verdict, alleging that the State failed to prove defendant guilty of home invasion beyond a reasonable doubt and the trial

court erred in denying defendant's motion to dismiss for a speedy trial violation. The court denied the motion and proceeded to sentencing.

¶ 8    At sentencing, Hartzler made a victim impact statement, sharing with the court the impact of the home invasion on her life. Then defendant made a statement of allocution. During his statement, defendant expressed confusion over the dismissal of count I of the indictment and the trial proceeding on count II of the indictment. He also challenged the evidence of his guilt, including an allegation that he had laboratory results saying his fingerprints were not found at the scene and evidence proving he was not there when the crime was committed. Defendant also stated:

> "[Defense counsel] then put in no witness list for me or nothing on my behalf. I went to trial with no witness list. The whole time I had witnesses on my behalf telling him that I wasn't here or another person committed this crime. This man never had my discovery. No body cam videos, no nothing, but we went to a trial."

After further statements about the insufficiency of the evidence of his guilt and the process of the trial, defendant reiterated his claim that defense counsel proceeded to trial without necessary discovery and failed to present witnesses identified by defendant.

¶ 9    Defendant was removed from the courtroom after his statement of allocation due to his "angry, insulting, and offensive remarks," and defendant was not present for the sentencing decision. The trial court, regarding defendant's statement of allocution, acknowledged:

> "I think the big loser, for a lack of a better term, in this is [defense counsel], and I'm not saying that about [defense counsel]. 9 out of 10 things that the defendant

said sound to me to be shortcomings on his representation, and I don't say that.

I'm not saying that about [defense counsel]."

Without further addressing defendant's statements regarding defense counsel, the court proceeded to sentence defendant to 26 years in prison.

¶ 10        This appeal followed.

¶ 11                                II. ANALYSIS

¶ 12        Defendant argues, in relevant part, that he made a *pro se* allegation of ineffective assistance of defense counsel during his statement of allocution, but the trial court erred in failing to conduct a preliminary inquiry into his allegation in accordance with *People v. Krankel*, 102 Ill. 2d 181 (1984). Defendant contends remand for further posttrial proceedings is proper. The State contends defendant's statements during his allocution were just statements of his unhappiness with defense counsel, not valid claims of ineffectiveness, so there was no cause for a *Krankel* inquiry.

¶ 13        A *Krankel* inquiry is triggered when a defendant clearly raises a *pro se* posttrial allegation of ineffective assistance of counsel. *People v. Ayres*, 2017 IL 120071, ¶ 18. No specific procedure is required; a defendant only needs to bring his allegation to the trial court's attention. *Id.* ¶ 11. When a defendant makes such an allegation, "the trial court must conduct an inquiry into the factual basis of the defendant's claim to determine whether new counsel should be appointed to assist the defendant." *People v. Bell*, 2018 IL App (4th) 151016, ¶ 35. After conducting the inquiry, if the court determines there is no merit to the allegation or it pertains only to matters of trial strategy, then it is not necessary to appoint new counsel. *Ayres*, 2017 IL 120071, ¶ 11. If the allegation shows possible neglect, though, new counsel should be appointed. *Id.* The question of whether defendant's statements were sufficient to trigger a *Krankel* inquiry is

- 4 -

reviewed *de novo*. *People v. Bates*, 2019 IL 124143, ¶ 14; *People v. Patton*, 2022 IL App (4th) 210561, ¶ 103. "Absent defendant asserting a clear claim of ineffective assistance of counsel, the trial court's duty to conduct a *Krankel* inquiry [is] not triggered." *People v. King*, 2017 IL App (1st) 142297, ¶ 20.

¶ 14 Our review of the record indicates the claims defendant made in his statement of allocution asserted a clear claim of ineffective assistance of counsel, sufficient to trigger the trial court's duty to conduct a preliminary *Krankel* inquiry. Defendant alleged his defense counsel proceeded to trial without complete discovery and did not present crucial evidence at trial. Defendant also alleged defense counsel did not present alibi witnesses identified by defendant. While the court may have properly evaluated some of defendant's claims based upon the court's own knowledge of defense counsel's performance at trial, some of defendant's claims would have been outside the court's knowledge and required an inquiry into the factual basis for the claims. See *People v. Jolly*, 2014 IL 117142, ¶ 30. There was no discussion with defendant and no "interchange between the trial court and trial counsel regarding the facts and circumstances surrounding the allegedly ineffective representation." (Internal quotation marks omitted.) *Id.* Thus, a remand for the limited purpose of conducting a posttrial preliminary *Krankel* hearing on defendant's allegation of ineffective assistance of counsel is appropriate.

¶ 15 As remand is necessary to conduct a preliminary *Krankel* inquiry, we decline to address at this time the merits of the other issues raised by defendant on appeal. See *Bell*, 2018 IL App (4th) 151016, ¶ 37 (declining to address the defendant's other claims where it was necessary to remand for the trial court to conduct a preliminary *Krankel* inquiry). We express no view on the merits of defendant's ineffective assistance claim or any of the other arguments he has made on appeal. However, we retain jurisdiction over defendant's remaining claims,

meaning he may appeal again if he is dissatisfied with the proceedings on remand and raise the claims that were not addressed in this order. See *People v. Wilson*, 2019 IL App (4th) 180214, ¶ 26.

¶ 16                                  III. CONCLUSION

¶ 17            For the reasons stated, we remand the cause with directions to conduct a preliminary *Krankel* inquiry into defendant's *pro se* posttrial claim of ineffective assistance of counsel.

¶ 18            Remanded with directions.