2021 IL App (1st) 190007-U

THIRD DIVISION
June 30, 2021

No. 1-19-0007

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of |
| | ) | Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 16 CR 7504 |
| | ) | |
| TRAVION LOCKETT, | ) | |
| | ) | Honorable Thaddeus L. Wilson, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

ORDER

¶ 1     *Held*: The trial court conducted a proper *Krankel* inquiry and did not err when it rejected defendant's ineffective assistance of counsel claim. The record is insufficient for defendant to show that he is entitled to a new sentencing hearing.

¶ 2     Defendant Travion Lockett was tried by a jury and found guilty of first-degree murder. In a posttrial proceeding, defendant asserted a claim that his trial counsel was constitutionally ineffective for failing to call alibi witnesses. The trial court rejected defendant's claim for ineffective assistance of counsel. Defendant argues on appeal that the trial court failed to undertake a proper inquiry of his claim in accordance with our supreme court's decision in

*People v. Krankel*, 102 Ill. 2d 181 (1984). We hold that the trial court conducted a proper inquiry of defendant's ineffective assistance of counsel claim and that it did not err when it rejected defendant's claim.

¶ 3     Following trial, defendant, who was 21 years old at the time of the offense, was sentenced to an aggregate of 101 years in prison. Defendant argues on appeal that the trial court failed to adequately account for his youth before it sentenced him to a *de facto* life sentence. We hold that defendant has not established that he is entitled to the additional sentencing protections afforded to juvenile offenders. The record is insufficiently developed to support defendant's claim. Accordingly, we affirm. With regard to defendant's sentence, our decision to affirm is without prejudice to his right to raise the issue in a collateral proceeding.

¶ 4                                    BACKGROUND

¶ 5     On March 8, 2016, Daysha Wright was shot and killed as she was traveling in a car driven by her boyfriend, Jason Merritt. Merritt testified at trial that he was attending a memorial with Daysha on West Maypole Avenue in Chicago. Many of their friends and family members were present. Merritt and Daysha decided to leave, and they got into Merritt's car to head to his mother's house. As they were driving, Daysha noticed defendant and said "look at Travion," and Merritt noticed a male walking on the street. Merritt and Daysha went back to the area of the memorial to tell their friends and family what they had seen. Merritt and Daysha then left again in Merritt's vehicle. As they were driving away for a second time, in the same direction as they had seen "Travion," Daysha said "there he go" and Merritt heard gunshots. He heard Daysha "holler" and then saw her making movements like something was wrong. Merritt drove back near the memorial to a location where he had previously seen police to try to get help.

¶ 6      Merritt went to the police station the next day. He identified defendant in a photo array as the shooter. At trial, however, defendant testified that he did not see the shooter's face on the night of the shooting. From the witness stand, Merritt identified the person he knows as Travion as defendant.

¶ 7      Chvazea Wright, Daysha Wright's sister, testified that she and her sister attended the memorial for James Major Adams at the Chicago Area Project building at Hoyne and Maypole. Chvazea testified that Daysha and Merritt left the memorial in Merritt's car. Daysha and Merritt returned, and Chvazea talked to her sister, who she described as nervous. Daysha told Chvazea that she had seen Travion. Chvazea knew what that name meant because she knew Travion and knew his sister. Chvazea took what her sister told her as a warning.

¶ 8      Chvazea saw Merritt and Daysha leave the memorial the second time and she followed on foot in the same direction they traveled because she was worried. She saw Travion and she witnessed him duck down between two parked cars. Chvazea identified defendant in court as the person that she had seen that night and who she was identifying as Travion in her testimony. She saw defendant come out from behind the parked cars and start firing at the car that her sister was in, the car driven by Merritt. Chvazea saw a gun in defendant's hands. Chvazea testified that she could see defendant's face. She went back to tell the other people at the memorial what had happened. Chvazea went to the police station the next day and identified defendant in a photo array as the person who shot her sister.

¶ 9      Detective Andrew Burns, Jr. was assigned to investigate Daysha Wright's murder. He went to the hospital and, as he walked towards the grieving family, Chvazea yelled that "Travion Lockett shot her sister." The police searched for defendant at his known addresses, but they

could not locate him. They enlisted the assistance of the U.S. Marshalls. Defendant was later found in Milwaukee, Wisconsin and was arrested and transported back to Illinois.

¶ 10    Before trial, in defendant's answer to the State's motion for discovery, he asserted an alibi defense. Defendant alleged that he was "at a dinner party with relatives and friends *** around when this incident occurred." Defendant further alleged that, after the dinner party, he "went to the Brown Sugar Bar *** where he was present with friends in the parking lot of that establishment." Defendant identified two witnesses that he would potentially call in support of his alibi: Shanquella Pigrim and Reginald Farr.

¶ 11    Ms. Pigrim, an employee of the Cook County Department of Corrections, refused to cooperate with the defense. She stated that she would stop coming to work if the defense investigator continued to look for her and stated that she would rather quit her job than lose her life with the gangs that were involved in this case. Ms. Pigrim disposed of her telephone so that the investigator could not reach her. She did not show up at trial.

¶ 12    Mr. Farr did show up at trial. On the third day of trial, when it became apparent that there would not be time for Farr to testify that day, defense counsel asked that Farr be excused and admonished to return the next day. The next morning, however, the defense appeared and indicated that it would be resting its case without calling any witnesses.

¶ 13    When the defense indicated that it would rest without putting forth any evidence, the trial court inquired of defendant as to whether he agreed to that strategy.

> "THE COURT: Mr. Lockett, at this time your attorney indicates
> that you will be resting your case without putting forth any
> witnesses in your case, not calling your alibi witnesses and not
> presenting your own testimony. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Do you agree with that?

THE DEFENDANT: Yes, sir.

THE COURT: You understand, sir, you have a right to testify. You make the decision as to whether or not you testify in consultation with your attorney. But ultimately it is your right and your decision as to whether or not you testify. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: At this time do you wish to testify?

THE DEFENDANT: No, sir.

THE COURT: Has anyone threatened you, promised you anything to get you not to testify?

THE DEFENDANT: No, sir.

THE COURT: Are you giving up your right to testify of your own free will?

THE DEFENDANT: Yes, sir.

THE COURT: Has anyone threatened you, promised you anything not to call your two alibi witnesses?

THE DEFENDANT: No, sir.

THE COURT: Are you in agreement to not call those witnesses of your own free will?

THE DEFENDANT: Yes, sir.

THE COURT: Defense will rest."

¶ 14    The jury deliberated and found defendant guilty of first-degree murder. The jury made a finding that defendant personally discharged a firearm that proximately caused Daysha's death. The jury also found defendant guilty of the attempted murder of Merritt, with a finding that defendant personally discharged a firearm when committing the offense.

¶ 15    At a posttrial proceeding, defendant objected to his trial counsel's representation and argued that he was provided with ineffective assistance of counsel. Specifically, defendant claimed that his attorney failed to impeach Jason Merritt. The trial court inquired into the basis of that objection. Ultimately, the trial court rejected defendant's objection pertaining to the questioning of Merritt. Defendant also objected to his trial counsel not calling the alibi witnesses in his defense.

"THE DEFENDANT: Yes, sir. Another thing as far as my witnesses –

THE COURT: All right.

THE DEFENDANT: – which I had.

THE COURT: What witness?

THE DEFENDANT: My alibi witness.

THE COURT: Right.

THE DEFENDANT: That we was going to use, three witnesses.

THE COURT: Right.

THE DEFENDANT: I didn't use none.

THE COURT: Right. And you said you agreed with that.

THE DEFENDANT: Yes, due to the fact what I was told by my counsel that we should just take the witness and run with it by

how the trial was going and, like it was going in my favor and we could win the case without the testimony and that the statement that my witness would have made wasn't going to look good as far as my guy.

THE COURT: Did the lawyer threaten you not to put forth these alibi witnesses?

THE DEFENDANT: No, sir.

THE COURT: And you agreed with him on your own free will not to call those alibi witnesses, correct?

THE DEFENDANT: Yes.

THE COURT: And I asked you those very questions at the trial, didn't I?

THE DEFENDANT: Yes, sir.

THE COURT: What else do you have?

MR. LOCKETT: That's it, sir."

¶ 16    The trial court rejected defendant's ineffective assistance claim pertaining to his trial counsel not calling the alibi witnesses. The trial court found that defendant's claim lacked merit, and therefore, it found that there was no need for it to appoint counsel for defendant to proceed on the issue. The court found the ineffective assistance claim to be "woefully inadequate."

¶ 17    After a sentencing hearing, the trial court sentenced defendant to 60 years in prison for the murder of Daysha Wright. The trial court sentenced defendant to 41 years in prison for the attempted murder of Jason Merritt. Defendant filed a motion to reconsider the sentence, which the trial court denied. Defendant now appeals.

¶ 18                                           ANALYSIS

¶ 19     On appeal, defendant argues that the trial court was required to explore the factual basis

of his assertion of ineffective assistance of counsel (citing *People v. Krankel*, 102 Ill. 2d 181

(1984)). Although defendant raised two claims of alleged ineffective assistance in the trial court,

his appeal only concerns his claim that his counsel failed to call alibi witnesses. Defendant also

argues that the trial court erred when it failed to take into consideration his youth before

sentencing him to a *de facto* life sentence.

¶ 20     Under *People v. Krankel*, 102 Ill. 2d 181 (1984), when a defendant raises a *pro se*

posttrial claim of ineffective assistance of counsel, the trial court is required to examine the

factual basis of the claim and determine if the claim merits further exploration. If the trial court

determines that the claim lacks merit or pertains only to matters of trial strategy, then the court

need not appoint counsel for defendant to further pursue the ineffectiveness claim and the court

may deny the motion. *People v. Jolly*, 2014 IL 117142, ¶ 29 (quoting *People v. Moore*, 207 Ill.

2d 68, 77-78 (2003)). In the context of a *Krankel* inquiry, some of the indications that a claim

"lacks merit" are that the claim is conclusory, misleading, legally immaterial, or it pertains solely

to an issue of trial strategy. *People v. Roddis*, 2020 IL 124352, ¶¶ 63-64. On the other hand, if a

preliminary examination of defendant's ineffective assistance claim does show possible neglect

by counsel, then the trial court should appoint counsel for defendant to proceed on the

ineffectiveness claim. *People v. Jackson*, 2020 IL 124112, ¶ 97. The issue of whether the circuit

court properly conducted a preliminary *Krankel* inquiry presents a legal question that we

review *de novo*. *Jolly*, 2014 IL 117142, ¶ 28.

¶ 21    Defendant argues that the trial court failed to conduct the first step of the inquiry: an examination of the claim's factual basis. Defendant states that "the trial court commits reversible error when it skips the initial determination of whether the defendant has produced evidence of possible neglect warranting the appointment of new counsel and addressing the merits of the claim." (Citing *People v. Jackson*, 2016 IL App (1st) 133741, ¶ 77). We find that the trial court conducted a proper inquiry under *Krankel*.

¶ 22    In this case, the trial court gave defendant the opportunity to specify his claim. Defendant stated that he was taking issue with the strategy employed by his trial counsel as it pertained to not calling his alleged alibi witnesses. The trial court pointed out that it had asked defendant during trial if defendant agreed with that strategy. Defendant admitted that he agreed with the strategy, but he elaborated that his agreement was based on his counsel's representation that the trial was going well and the notion that they could succeed without calling the witness. Defendant stated that his counsel informed him that the witness's statement was not going to look good. The trial court inquired further about whether defendant agreed with counsel's decision, on defendant's own free will, not to call the alibi witnesses. Defendant replied that he did agree with counsel about not calling the witnesses. The court then asked defendant if he had anything further to argue, to which defendant responded that he did not.

¶ 23    A trial court's method of inquiry at a *Krankel* hearing is somewhat flexible. *People v. Fields*, 2013 IL App (2d) 120945, ¶ 40. The trial court may consider any facial insufficiency of the defendant's allegations and may: (1) ask the defendant's trial counsel questions; (2) briefly discuss the allegations with the defendant; or (3) rely upon its own knowledge of counsel's performance. *Id*. at ¶ 39.

¶ 24    Here, the trial court had a significant degree of personal knowledge about the facts giving rise to defendant's claim. At trial, the court was aware that defendant had disclosed alibi witnesses that he potentially intended to call. The trial court questioned defendant about the decision not to call alibi witnesses before he rested his case at trial and asked defendant if it was a decision defendant was making on his own free will, to which defendant responded in the affirmative. At the posttrial proceeding in which defendant asserted the ineffective assistance of counsel claim, defendant provided the trial court with further information. The trial court knew who the witnesses were, what matters they would be called to testify about, and the court expressly knew about the defense's strategic decision to tender the case to the jury without presenting evidence. See *People v. Barnes*, 364 Ill. App. 3d 888, 899 (2006). The trial court had sufficient knowledge of the factual basis of defendant's claim to make an assessment of whether the claim had merit. *People v. McCarter*, 385 Ill. App. 3d 919, 942 (2008).

¶ 25    Defendant's claim is derived from a pure matter of trial strategy. The defense adopted a strategy at trial that the State had failed to prove defendant guilty beyond a reasonable doubt. It was a strategic choice made after evaluation and consultation. Defendant's statements during the *Krankel* inquiry confirmed that the decision made between him and his trial counsel was strategic based on how the trial was going. Defendant, with advice from his counsel, decided that offering Reginald Farr's testimony was not going to be most favorable to him, and defendant made the strategic choice to proceed without alibi testimony. Even during the *Krankel* inquiry, defendant admitted that he *agreed* with the strategy not to call alibi witnesses. Defendant strategically opted for a reasonable doubt defense instead of an alibi defense.

¶ 26    During a *Krankel* inquiry, if the trial court concludes that the challenge is solely to a reasonable matter of trial strategy, the court may deny the ineffective assistance claim. *Jackson*,

2020 IL 124112, ¶ 97. The decision whether to call particular witnesses is generally a matter of trial strategy. *People v. Hobley*, 159 Ill. 2d 272, 305 (1994) An attorney's decision not to call a particular witness is a strategic decision that is "generally immune from claims of ineffective assistance of counsel." *People v. Wilborn*, 2011 IL App (1st) 092802, ¶¶ 79, 82. As in *Wilborn*, where trial counsel and the defendant decided not to call a particular witness because it was not in the defendant's "best interests," such a decision, like the one in this case, was the product of sound trial strategy that does not support a claim for ineffective assistance of counsel. *Id*. at ¶ 82.

¶ 27 Defendant contends that there is support for his ineffective assistance claim where counsel set up an alibi defense in the opening statement, but then did not support the defense with testimony. However, counsel made no indication in the opening statement that an alibi defense was forthcoming. Counsel merely indicated that the evidence at trial would not show defendant's guilt.

> "[T]he witnesses that you will hear from, they want someone to be
> held responsible for Daysha's murder. For this crime. But the
> problem is that Travion Lockett is not guilty. That Travion
> Lockett was not on the 2200 block of west Maypole that night.
> And that he was not the shooter in this case. And the evidence
> will show that he is not responsible for the death of Daysha
> Wright."

Nothing in the opening statement informed the jury that defendant would be presenting an alibi defense. Defense counsel never mentioned the names of the potential witnesses nor did he discuss defendant's supposed presence at the Brown Sugar Bar.

¶ 28    On its face, defendant did not set forth an arguably meritorious claim for ineffective assistance of counsel. His attempt at stating a claim consists of a matter of strategy and, moreover, defendant agreed that it was the strategic course he wanted to take. *Wilborn*, 2011 IL App (1st) 092802, ¶¶ 79-83; see also *People v. Harvey*, 211 Ill. 2d 368, 385 (2004) (an accused may not request to proceed in one manner and then later contend on appeal that the course of action was in error) (quoting *People v. Carter*, 208 Ill. 2d 309, 319 (2003)). Defendant's ineffective assistance claim is really an attempt to seek a second bite at the apple following a reasonable, albeit unsuccessful, strategic decision at trial. The trial court did not err in rejecting the claim for ineffective assistance following its inquiry, and the trial court conducted a proper inquiry under *Krankel*.

¶ 29    The second issue defendant raises on appeal is that the trial court erred when it did not adequately consider his youth before sentencing him to a *de facto* life sentence. Defendant was 21 years old at the time of the offense and, therefore, the Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 460 (2012) "does not apply directly to his circumstances." *People v. Harris*, 2018 IL 121932, ¶ 45. As defendant acknowledges, "neither the United States Supreme Court nor the Illinois Supreme Court has applied the eighth amendment holding of *Miller* to cases involving those over the age of 18." Defendant nonetheless argues that he should be entitled to make a record in the trial court to show "why *Miller*'s sentencing protections apply to [him]."

¶ 30    In *Harris*, our supreme court left the door open to the possibility that certain young offenders over the age of 18 might be able to demonstrate that they should be afforded additional sentencing protections that account for the offenders' level of maturity and development. *Harris*, 2018 IL 121932, ¶ 46. However, in this case, as in *Harris*, "[t]he record must be developed

sufficiently to address defendant's claim that *Miller* applies to his particular circumstances. *Id*. at ¶ 45.

¶ 31    The record in this case lacks evidence about defendant's personal development to determine whether the evolving approach to sentencing young offenders might apply to him. Defendant did not offer, and the trial court did not make any findings about, the facts needed to determine whether *Miller* might apply to defendant as an adult offender. At this stage, defendant's claim is based on his age alone. He essentially argues that, as a 21-year-old, his brain was not fully developed and he should be found less culpable. Sitting in review, we cannot assess defendant's claim.

¶ 32    When an adult defendant fails to make a record sufficient to determine whether the additional sentencing protections might apply to him, the proper avenue for such a challenge is a collateral proceeding. *Id*. at ¶ 48. Thus, we decline defendant's request that we remand the case for a new sentencing hearing so that he may make a record to support his claim. Instead, we affirm defendant's sentence, but expressly note that our decision to affirm is without prejudice to defendant raising this issue in a collateral proceeding as our supreme court set forth in *Harris*. See *id*.

¶ 33    Defendant argues that his trial counsel was ineffective for failing to advocate for juvenile sentencing protections for him during sentencing. Defendant contends that counsel should have requested a hearing to present evidence that juvenile sentencing protections should be afforded to him. While this court and our supreme court have held that requesting *Miller* sentencing protections for an adult is something counsel *can* do, we have never come anywhere close to holding that counsel is *required* to do so in order to provide constitutionally adequate representation. As defendant acknowledges, "neither the United States Supreme Court nor the

Illinois Supreme Court has applied the eighth amendment holding of *Miller* to cases involving those over the age of 18." See *Harris*, 2018 IL 121932, ¶ 61. Defendant faces additional obstacles where, not only was he over the age of 18 when he committed these crimes, he was over the age of 21.

¶ 34    Moreover, with there being nothing in the record about defendant's maturity or development, we cannot know if counsel should have sought such protections for defendant based on defendant's characteristics. We likewise cannot know if defendant was prejudiced *i.e.* we cannot know if defendant would have had any chance of success in securing additional sentencing protections based on his level of development. Defendant argues that he has been prejudiced to the extent that trial counsel's failure to raise the issue may have forfeited the issue for review. However, our holding in this case is that defendant is entitled to raise this claim in a collateral proceeding without prejudice. We find no forfeiture with regard to any substantive right of defendant to challenge his sentence based on his maturity and development.

¶ 35    Defendant's final argument is that his sentence was excessive. The sentencing range for defendant's first-degree murder conviction is 45 years to life for personally discharging a firearm that proximately caused Daysha Wright's death (20-60 years for murder plus an additional 25 years-to-life for personally discharging a firearm that proximately caused Wright's death). 730 ILCS 5/5-4.5-20(a) (West 2018); 730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2018). The sentencing range for defendant's attempted murder conviction is 26-50 years for attempted murder during which he personally discharged a firearm (6-30 years for attempted murder plus 20 years for personal discharge). 720 ILCS 5/8-4(c)(1) (West 2018). The trial court sentenced defendant to 60 years for murder, and 41 years for attempt murder, to be served consecutively—an aggregate sentence of 101 years.

¶ 36    Defendant's main contention regarding the length of his sentence is that the trial court did not adequately consider rehabilitation. Defendant contends that "[n]othing suggests that Mr. Lockett was beyond rehabilitation such that a *de facto* life sentence was necessary, particularly because most young adults have a high capacity for reform and rehabilitation that fully mature adults do not possess." (Citing *People v. House*, 2019 IL App (1st) 110580-B, ¶ 55).

¶ 37    "[W]hen a sentence falls within the statutory guidelines, it is presumed to be proper and will not be disturbed absent an affirmative showing that the sentence is at variance with the purpose and spirit of the law or is manifestly disproportionate to the nature of the offense." *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46. Within the statutory guidelines, a trial court has broad discretion when fashioning and imposing a sentence. *People v. Patterson*, 217 Ill. 2d 407, 448 (2005). "[T]he most important factor a court considers when deciding a sentence is the seriousness of the offense." *People v. Evans*, 373 Ill. App. 3d 948, 968 (2007).

¶ 38    Defendant was on parole for another felony offense when he committed this murder and attempted murder. The jury found that defendant intended to kill the young couple. The evidence showed that defendant was lying in wait, hiding between vehicles before he opened fire on a residential street, fulfilling his intention to kill. Defendant fled the state of the Illinois following the shooting. Defendant also had a significant criminal history. Defendant's conduct in the incident giving rise to this case demonstrated that incarceration followed by parole was not a sufficient deterrent to stop him from committing a violent crime or to rehabilitate his pattern of criminal conduct. The record demonstrates that defendant's 60 and 41-year sentences are not at odds with spirit and purpose of the law, and we find that the trial court did not abuse its discretion when fashioning defendant's sentence.

¶ 39                                    CONCLUSION

¶ 40    Accordingly, we affirm.

¶ 41    Affirmed.